**OPRYLAND USA INC., Appellant,**

v.

**The GREAT AMERICAN MUSIC SHOW, INC., Appellee.**

**No. 91–1179.**

United States Court of Appeals, Federal Circuit.

July 14, 1992.

Rehearing Denied Aug. 25, 1992.

L. Lawton Rogers, III, Rogers & Killeen, Alexandria, Va., argued for appellant. With him on the brief was Joseph M. Killeen.

Norman H. Zivin, Cooper & Dunham, New York City, argued for appellee. With him on the brief was Donna A. Tobin.

Before NEWMAN, Circuit Judge, BENNETT, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Opryland USA Inc. appeals the summary judgment of the Trademark Trial and Appeal Board of the United States Patent and Trademark Office, denying cancellation of The Great American Music Show, Inc.'s registration of the service mark THE CAROLINA OPRY. Opryland also appeals the Board's summary judgment dismissing Opryland's opposition to registration of the service mark CALVIN GILMORE PRESENTS THE CAROLINA OPRY.[1] We conclude that the Board erred in deciding these issues on motion for summary judgment, for there were genuinely disputed facts material to their disposition.

### The Board Proceedings

Opryland is the owner of several registered service marks for country music entertainment services, including GRAND OLD OPRY, GRAND OLE OPRY, OZARK OPRY, OPRYLAND USA, and OPRYLAND. First use of GRAND OLE OPRY was in 1927. Great American states that it has used the marks THE CAROLINA OPRY and CALVIN GILMORE PRESENTS THE CAROLINA OPRY since 1986. It was not disputed that Opryland's marks were prior in use, and that the country music entertainment services designated for Great American's marks and those of Opryland are substantially the same.

Opryland's opposition and cancellation petitions allege that Great American's marks so resemble Opryland's marks for similar services as to be likely to cause confusion, mistake, or deception within the meaning of section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d); and that Great American's marks so resemble Opryland's marks as to falsely suggest a connection with Opryland within the meaning of Lanham Act § 2(a), 15 U.S.C. § 1052(a).

▮▮ The Federal Rules of Civil Procedure generally apply to proceedings before the Trademark Trial and Appeal Board. 37 C.F.R. § 2.116(a). Thus on motion for summary judgment the Board must first ascertain whether there is a genuine issue as to any material fact. Fed.R.Civ.P. 56(c). A material fact is one that may affect the

1. *Opryland USA Inc. v. Carolina Enterprises, Inc.*, Opposition No. 80,323, Cancellation No. 18,246 (TTAB Nov. 16, 1990). Carolina Enter- prises, Inc. has become, by change of name, The Great American Music Show, Inc.

decision, whereby the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine dispute is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the non-moving party. *Id.* The evidence submitted by the non-movant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. at 2513; *see also Cooper v. Ford Motor Co.*, 748 F.2d 677, 679, 223 USPQ 1286, 1288 (Fed.Cir.1984). While the non-moving party is not required to present its entire case in response to a motion for summary judgment, to defeat the motion the non-movant must present sufficient evidence to show an evidentiary conflict as to the material fact in dispute, *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 149, 229 USPQ 721, 722 (Fed.Cir.1986), with due consideration to the evidentiary burdens, *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. Whether these various requirements have been met, and whether the procedural and substantive law were correctly applied by the Board, are reviewed *de novo* by this court.

The Board granted Great American's motion for summary judgment, holding that no material fact was in dispute and that, as a matter of law, there was no likelihood of confusion under section 2(d). The Board's premise was that since the word "opry" is generic for country music shows, its presence in the various marks of both parties receives no consideration or weight when comparing CAROLINA OPRY with, for example, GRAND OLE OPRY, OZARK OPRY, and OPRYLAND. The Board held that because the word "opry" is the only element common to the CAROLINA OPRY marks[2] and those of Opryland, and because the marks are "otherwise dissimilar", confusion is unlikely as a matter of law. The Board also held that Opryland was collaterally estopped from disputing the generic nature and meaning of "opry"

in view of the decision in *WSM, Inc. v. Hilton*, 724 F.2d 1320, 221 USPQ 410 (8th Cir.1984), wherein "opry" was found to be a generic word for country music shows. Having held that confusion is unlikely under section 2(d), the Board also held that there could be no false suggestion under section 2(a).

I

*Likelihood of Confusion, Lanham Act § 2(d)*

Likelihood of confusion is a ground for opposition to trademark or service mark registration, and for cancellation of registration if raised within five years after registration. *See* Lanham Act § 13 (opposition) and § 14 (cancellation); 15 U.S.C. §§ 1063 and 1064. On appeal of decisions of the Trademark Trial and Appeal Board, the Board's determination of whether confusion is likely is reviewed by the Federal Circuit as a question of law based on findings of underlying facts. *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669, 671, 223 USPQ 1281, 1282 (Fed.Cir.1984). The factual findings, in turn, are reviewed on the clearly erroneous standard. *Id.*

The principal factual considerations pertinent to the issue of likelihood of confusion are collected in *In re E.I. duPont de Nemours & Co*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). Not all of the *duPont* factors are relevant or of similar weight in every case. The relevant facts with respect to the service marks here at issue include the similarities and differences among the various marks; the appearance, sound, connotation, and commercial impression of the marks; the nature of the services with which the marks are associated; the channels of trade in which the marks are used; the promotion, amount, and length of use of the several marks; and the nature and extent of any actual confusion.

2. Distinctions between CAROLINA OPRY and CALVIN GILMORE PRESENTS THE CAR-

OLINA OPRY are not pressed on this appeal.

## A

■ The Board compared the CAROLINA OPRY marks with Opryland's marks such as GRAND OLE OPRY or OZARK OPRY after excluding the word "opry". The incorrectness of this analytical approach is apparent, for marks must be considered in the way they are perceived by the relevant public, in determining likelihood of confusion. Although it is often helpful to the decisionmaker to analyze marks by separating them into their component words or design elements in order to ascertain which aspects are more or less dominant, such analysis must not contravene law and reason. When it is the entirety of the marks that is perceived by the public, it is the entirety of the marks that must be compared. *See Estate of P.D. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 545–6, 40 S.Ct. 414, 417, 64 L.Ed. 705 (1920) ("The commercial impression of a trademark is derived from it as a whole, not from its elements separated and considered in detail. For this reason it should be considered in its entirety …") *See also Specialty Brands*, 748 F.2d at 672–73, 223 USPQ at 1282–83 (comparing SPICE VALLEY and SPICE ISLANDS, viewed as a whole); *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570, 218 USPQ 390, 395 (Fed.Cir.1983) (comparing GIANT FOOD and design and GIANT HAMBURGERS and design, viewed in their entireties); *Coca–Cola Co. v. Clay*, 324 F.2d 198, 199–200, 139 USPQ 308, 309 (CCPA 1963) (comparing COCA–COLA and CUP-O'-COLA, viewed as a whole). *See generally* 1 J. Thomas McCarthy, *Trademarks and Unfair Competition* §§ 11:10, 12:12(C) (2d ed. 1984 & 1990 Supp.) Thus it is not dispositive whether generic or descriptive words are included as part of the mark; that is simply a factor to be considered when viewing the mark as a whole.

Opryland correctly points out that the issue before the Board was not whether use of the word "Carolina" is likely to cause confusion, as to source, with the words "Grand Ole" or the word "Ozark", but whether use of the mark CAROLINA OPRY is likely to cause confusion, as to source, with the marks GRAND OLE OPRY or OZARK OPRY or OPRYLAND USA. The Board erred by excluding the word "opry", and thereby failing to consider the marks as a whole.

## B

■ In its opposition to Great American's summary judgment motion Opryland submitted affidavit evidence of the extent of use of its marks in live performances and in radio and television broadcasts. This evidence supported reasonable inferences in favor of Opryland's position that its marks are well-known to the relevant public. A well-known mark enjoys an appropriately wider latitude of legal protection, for similar marks tend to be more readily confused with a mark that is already known to the public. *See Kenner Parker Toys Inc. v. Rose Art Industries, Inc.*, 963 F.2d 350, 353, 22 USPQ2d 1453, 1456 (Fed.Cir.1992); *Nina Ricci S.A.R.L. v. E.T.F. Enters., Inc.*, 889 F.2d 1070, 1074, 12 USPQ2d 1901, 1904 (Fed.Cir.1989).

■ Other significant evidentiary factors, such as prior use in commerce and similarity of the services with which the marks are associated, were conceded in Opryland's favor. The length of prior use must be considered in deciding the ultimate question of likelihood of confusion. *See, e.g., Specialty Brands*, 748 F.2d at 674–75, 223 USPQ at 1284.

All of these factors must be given weight appropriate to their evidentiary value; they can not be ignored.

## C

Public perception of the various marks is a material fact, for findings on this question can affect the determination of likelihood of confusion. In its opposition to Great American's motion for summary judgment Opryland raised the factual issue of the public perception of the relationship between the sources of these substantially identical entertainment services. Opryland stated that it could not fully respond to the motion until discovery was completed:

On information and belief, "The OPRY" is perceived by the public in Tennessee and in South Carolina to be GRAND OLE OPRY, and CAROLINA OPRY to be associated with, sponsored by, or licensed by GRAND OLE OPRY.... Discovery is ongoing, and OPRYLAND intends to conduct substantial discovery in this matter. Until discovery has been completed, OPRYLAND cannot fully respond to the present motion.

Discovery had been suspended, in accordance with Trademark Rule 2.127(d),[3] when Great American moved for summary judgment. The Board denied Opryland's request for time to complete discovery, stating that Opryland had failed to set forth the need therefor with the requisite particularity.

■ Federal Rule of Civil Procedure 56(f)[4] requires the nonmoving party to state, by affidavit, reasons why discovery is needed in order to support its opposition to a motion for summary judgment. *Keebler Co. v. Murray Bakery Products*, 866 F.2d 1386, 1389, 9 USPQ2d 1736, 1739 (Fed. Cir.1989). Opryland averred, "on information and belief", that based on the extensive exposure of its marks to the public, as set forth in detail in the supporting affidavit, the public perceives CAROLINA OPRY to be "associated with, sponsored by or licensed by GRAND OLE OPRY". As explained in *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511, Rule 56(e) states that a party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." However, "[t]his requirement in turn is qualified by Rule 56(f)'s provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Id.*, at 250 n. 5, 106 S.Ct. at 2511 n. 5. Since Opryland has shown a sufficient basis for its need of additional discovery, it can not be deprived of the discovery needed to place at issue material factual questions in opposition to the motion. That is the safeguard to which Rule 56(f) is directed. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (Rule 56(f) provides nonmovants with protection from being "railroaded" by premature summary judgment motions); *National Life Ins. Co. v. Solomon*, 529 F.2d 59, 61 (2d Cir.1975) (summary judgment is improper when the opposing party has yet to exercise pretrial discovery); *Dunkin' Donuts of America, Inc. v. Metallurgical Exoproducts Corp.*, 840 F.2d 917, 919, 6 USPQ2d 1026, 1028 (Fed.Cir.1988) (Board prematurely granted summary judgment, contrary to Rule 56(f)).

■ Thus, when the discovery is reasonably directed to "facts essential to justify the party's opposition", in the words of Rule 56(f), such discovery must be permitted or summary judgment refused. *See Anderson*, 477 U.S. at 250 n. 5, 106 S.Ct. at 2511 n. 5 The evidence sought by Opryland is directly related to the principal issues raised by Great American for summary adjudication. Opryland's affidavit states more than a mere speculative hope of finding evidence that might tend to support a claim, see *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1566–67, 4 USPQ2d 1793, 1799 (Fed.Cir.1987), for the public perception of the relation between CAROLINA OPRY and GRAND OLE OPRY, OZARK OPRY, and OPRYLAND is not peripheral to the issue, but at its core. *See J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1463–64, 18 USPQ2d 1889, 1892 (Fed.Cir.1991) (although it is not necessary to show actual confusion, evidence of actual confusion is relevant to determination of likelihood of confusion). Evidence of actual confusion

---

3. **37 C.F.R. § 2.127(d).** When any party files a motion ... for summary judgment ... the case will be suspended by the Trademark Trial and Appeal Board with respect to all matters not germane to the motion....

4. **Rule 56(f).** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

can constitute strong proof of likelihood of confusion. 2 McCarthy, *supra,* § 23:2(B).

The Board erred in denying Opryland the right, in accordance with Rule 56(f), to obtain evidence on the material facts of public perception and actual confusion.

### D

For these reasons, summary judgment on the issue of likelihood of confusion was improvidently granted. The judgment with respect to section 2(d) is vacated, and the issue is remanded for further proceedings.

### II

*False Suggestion, Lanham Act § 2(a)*

■ Lanham Act § 2(a), 15 U.S.C. § 1052(a), provides that registration may be denied when the mark

consists of or comprises ... matter which may ... falsely suggest a connection with persons, living or dead.

A "person" may be a corporation or other entity. Lanham Act § 45, 15 U.S.C. § 1127.

Great American's motion for summary judgment was directed only to the issue of likelihood of confusion, and did not refer to Opryland's claims of false suggestion. The Board, however, summarily dismissed Opryland's section 2(a) claim, holding that since there was no likelihood of confusion under section 2(d), there could be no false suggestion under section 2(a). In *Morehouse Mfg. Corp. v. J. Strickland & Co.,* 407 F.2d 881, 888–89, 160 USPQ 715, 721 (CCPA 1969) the court stated that false suggestion requires the existence of likelihood of confusion. In *University of Notre Dame Du Lac v. J.C. Gourmet Food Imports Co.,* 703 F.2d 1372, 1376, 217 USPQ 505, 509 (Fed.Cir.1983), the court added that section 2(a) embraces concepts of the right to privacy which may be violated even in the absence of likelihood of confusion. However, we do not reach the question of whether Opryland's section 2(a) claim can be supported in the absence of a showing of likelihood of confusion, in view of our vacation of the Board's summary judgment and our remand for determination of likelihood of confusion.

Since the Board's determination as to section 2(a) now is without foundation, it is also vacated. The issue is not subject to summary determination, for questions of material fact have been raised, to be determined on remand.

### III

*Generic Status of "Opry"*

■ Opryland seeks to reopen the question of whether "opry" is generic for country music entertainment. The Board held that Opryland was estopped from disputing the generic status of "opry" in view of the decision in *WSM, Inc. v. Hilton,* 724 F.2d 1320, 221 USPQ 410 (8th Cir.1984), which affirmed the district court's finding that "opry" was generic for country music shows. WSM, Inc. was Opryland's corporate predecessor. Opryland states that it is not disputing the decision in *WSM v. Hilton,* but that circumstances have changed since the time of that decision. *See generally Montana v. United States,* 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979) (before applying collateral estoppel it is proper to consider whether controlling facts or legal principles have changed since the initial determination); 1B James W. Moore et al., *Moore's Federal Practice* ¶ 0.448 (1992).

Whether "opry" has been recaptured as a trademark is not the subject of these opposition and cancellation proceedings, which deal with the registrability of the CAROLINA OPRY marks. However, Opryland is not estopped from showing the public perception of "opry", as a significant component of the marks at issue. The Board erred in holding that Opryland could not present evidence of the present public perception of the term "opry", for such evidence is of probative value in connection with the section 2 issues requiring adjudication.

### IV

*Sanctions*

■ Great American asserts that Opryland's appeal is frivolous, and moves for the imposition of sanctions.

Opryland's appeal of the Board's grant of summary judgment was taken as of right. Lanham Act § 21(a)(1), 15 U.S.C. § 1071(a)(1). The appeal is not devoid of basis, as is apparent from our decision of the several issues raised. Great American made no allegation of misrepresentation or bad faith, and indeed did not mention the issues of likelihood of confusion or false suggestion in its motion for sanctions.

Great American's motion was based solely on the position that Opryland's "changed circumstances" argument is frivolous in view of *WSM, Inc. v. Hilton.* However, the court in *WSM, Inc. v. Hilton* did not and could not decide questions that were not before it, including the matter of usage and public perception years into the future. It was not sanctionable behavior for Opryland to seek to raise this issue based on the asserted changed circumstances.

Although Great American did not meet the obligations of a movant for sanctions, Opryland was obliged to defend its right to bring this appeal, and to defend its good faith against a vague and unsupported inference of bad faith. The filing of an unwarranted motion for sanctions is not responsible advocacy. It simply produces satellite litigation, replacing fair debate of legal theory and factual premise with tactical distraction, increasing the cost to the parties, and placing an unnecessary burden on the court that must ascertain the merits of the motion.

The motion is DENIED.

*Costs*

Costs to Opryland.

VACATED AND REMANDED.